**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janis E Ware, | No. CV-22-01038-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 11) and the Commissioner's answering brief (Doc. 14), as well as the Administrative Record (Doc. 10, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.      Procedural History

On March 5, 2019, Plaintiff filed an application for disability and disability insurance benefits. (AR at 18.) Although Plaintiff initially alleged an onset date of October 31, 2015, she later amended the alleged onset date to May 24, 2019. (*Id.*) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On March 30, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 18-28.) The Appeals Council later denied review. (*Id.* at 1-4.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity between her amended alleged onset date (May 24, 2019) and her date last insured (December 31, 2020) and that Plaintiff had the following severe impairments: "depressive disorder and anxiety disorder." (AR at 20-21.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 21-23.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can perform jobs requiring no more than simple, routine repetitive tasks, not performed in a fast paced production environment, involving relatively few work place changes and which require no more than occasional interaction with supervisors, coworkers, and members of the public.

(*Id.* at 23.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 24.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. Weinberg, M.D., state agency medical consultant ("persuasive"); (2) Dr. Kerns, Ph.D., state agency psychological consultant ("persuasive"); (3) Dr. Garland, Ph.D., state agency psychological consultant ("persuasive"); and (4) Dr. Hurd ("persuasive to the extent that the opinion supports the finding that the claimant has severe mental health impairments"). (*Id.* at 21, 25-26.) Additionally, the ALJ evaluated third-party statements from Plaintiff's husband and daughter ("not persuasive"). (*Id.* at 26-27.)

---

[1] The ALJ also noted that Plaintiff presented evidence of "chronic kidney disease, diabetes mellitus, anemia, hyperlipidemia, right knee osteoarthritis, and heart murmur" but concluded that those impairments were "nonsevere." (AR at 21.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff could not perform her past relevant work as a microcomputer support specialist, Plaintiff was able to perform other jobs that exist in significant numbers in the national economy, including cleaner II, industrial cleaner, and laborer. (*Id.* at 27-28.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 28.)

IV. Discussion

Plaintiff presents only one issue on appeal: whether the ALJ improperly discredited her symptom testimony. (Doc. 11 at 2.) As a remedy, Plaintiff seeks a remand for "the payment of benefits" or, "[i]n the alternative, . . . for the correction of the legal errors." (*Id.* at 17.)

    A.    **Symptom Testimony**

        1.    Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). In this analysis, the ALJ may look to "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

…

- 4 -

2.     The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ began by providing the following summary of Plaintiff's testimony regarding her symptoms:

> The claimant alleged in the disability report that kidney disease, anxiety, type two diabetes, and depression limited her ability to work. She alleged in the latest function report that her conditions affected her ability to walk, climb stair[s], her memory, her ability to complete tasks, her ability to concentrate, her ability to understand, her ability to follow instructions, and her ability to get along with others. She testified at the hearing that she was unable to work due to her inability to be around people, her anxiety, which reportedly results in difficulties with focus, depression, which reportedly results in crying spells, and impairments of diabetes, which is controlled, and chronic kidney disease stage 3.

(AR at 24, record citations omitted.) The ALJ then identified the following reasons for deeming Plaintiff's testimony less than fully credible: "[C]laimant's reported activities of daily living, review of systems, examination results, observations and repo[r]ts made by providers, and opinions provided by medical sources . . . support[] the finding that the claimant is not limited to the extent alleged." (*Id.* at 25.)

More specifically, as for the first reason (inconsistency with activities of daily living), the ALJ explained in an earlier portion of the decision that in one version of her function report, Plaintiff's "reported . . . activities of daily living independently . . . include performing personal care, preparing simple meals, shopping in stores and by computer, and manag[ing] personal finances" as well as "spend[ing] time with others, such as with family when they visited." (*Id.* at 22.) The ALJ concluded that such activities were inconsistent with Plaintiff's subsequent allegations "that her conditions affected her memory, her ability to complete tasks, concentration, understanding, her ability to follow instructions, and her ability to get along with others." (*Id.* at 25.) The ALJ also noted the existence of "notable inconsistencies" between the two function reports that Plaintiff submitted, with the former indicating that Plaintiff "maintained the ability to prepare meals, perform household chores (such as doing the laundry, cleaning the bed, and general cleaning), and shop in stores" and the latter indicating that Plaintiff's "functioning reportedly was so limited that she was no

longer independent in terms of daily living activities and relied on assistance from her husband for basic tasks, such as cooking, cleaning, laundry, and shopping, a drop in functioning that the undersigned is unable to support with treatment records and examination findings for this period." (*Id.* at 26.)

As for the second reason (inconsistency with objective medical evidence), the ALJ acknowledged that "[t]reatment records show ongoing and consistent mental health treatment since the amended alleged onset date, with providers observing that [Plaintiff], on occasions, was tearful and had reactive and mood" and that "[t]he record also indicates [Plaintiff] reported experiences with depression and anxiety, as well as ongoing struggle with stressors, such as the loss of her son." (*Id.* at 25.) Nevertheless, the ALJ noted that "[e]xamination results routinely show normal or intact memory, normal or intact attention span and concentration, and normal or intact judgment and insight while observations and reports made by providers indicate [Plaintiff] was calm and cooperative with treatment and providers." (*Id.*) Additionally, the ALJ noted that Plaintiff's "presentation and performance at a consultative exam . . . indicated [Plaintiff] was able to sustain concentration during the 60-minute exam and was able to obtain a score of 26 out of possible 30 on the mini mental status exam." (*Id.*) The ALJ concluded that such results suggested that Plaintiff had only "moderate limitation" in some of the functional areas arising from her mental impairments. (*Id.* at 22.)

As for the third reason (inconsistency with medical opinions), the ALJ stated that because the opinions of the state agency psychological consultants, which "limited [Plaintiff] to work with relatively low interpersonal contact, work that is consistent with simple, routine repetitive tasks, and work with changes in a routine work setting," were "persuasive" (*id.* at 26), this too supported the conclusion that Plaintiff had only "moderate limitations in the broad areas of [mental] functioning" and was "not limited to the extent alleged" (*id.* at 25).

…

…

- 6 -

3. The Parties' Arguments

Plaintiff argues that "[t]he ALJ impermissibly rejected [her] subjective symptom testimony." (Doc. 11 at 5, capitalization omitted.) Plaintiff begins by noting that, because she came forward with objective medical evidence of her alleged impairments, the ALJ could only reject her symptom testimony by providing specific, clear and convincing reasons. (*Id.* at 5-7.) Plaintiff argues that the ALJ failed to do so because the ALJ merely provided "a general discussion of the medical evidence" and did not "actually offer[] any rationale to reject [her] testimony." (*Id.* at 7-8.) According to Plaintiff, "beyond the conclusory statement that the objective evidence does not support the testimony, the ALJ nowhere connects any of [her] testimony to the ALJ's analysis." (*Id.* at 9.) Plaintiff continues: "At no point did the ALJ 'identify the specific testimony' that is undermined by plaintiff's treatment history." (*Id.* at 10-11.) Plaintiff contends that, if anything, the "objective medical evidence supports [her] testimony" because it shows that she has been prescribed various psychotropic medications "to treat her severe mental health impairments." (*Id.* at 11-12.) As for the ALJ's contention that her testimony conflicted with her reported activities of daily living, Plaintiff argues that the ALJ's analysis is faulty because "[t]he ALJ does not state what those 'reported' activities are which are consistent with the ability to work. That is because nothing in [her] descriptions of her limitations or as described by the ALJ or anywhere else in the record or in the decision indicates that she is capable of maintaining substantial gainful work activity." (*Id.* at 12-13.) According to Plaintiff, "[t]he fact that [she] has some ability some of the time to perform something is not reason enough to find a lack of credibility. . . . [Her] descriptions of her activity levels . . . are far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." (*Id.* at 13-15.) Plaintiff also cites Ninth Circuit decisions in why ALJs were reversed for improperly discrediting symptom testimony based on supposed conflicts with daily activities. (*Id.* at 15-16.)

The Commissioner disagrees and defends the sufficiency of the ALJ's reasoning. (Doc. 14 at 2-14.) The Commissioner's overarching argument is that "the ALJ made

- 7 -

sufficiently specific findings," "[t]he linkage between Plaintiff's testimony and the ALJ's findings is readily discernable," and "substantial evidence supports the ALJ's findings." (*Id.* at 4.) First, as for the ALJ's determination that Plaintiff's testimony was inconsistent with the objective medical evidence, the Commissioner argues that the ALJ's reasoning was sufficient because the ALJ expressly discussed the observations by Plaintiff's providers and the results of Plaintiff's consultative exam, "explicitly connected her analysis of Plaintiff's subjective complaints to her earlier discussion of the 'paragraph B' criteria," and "[u]ltimately . . . show[ed] that the objective medical evidence largely consisted of normal examination findings throughout the longitudinal record." (*Id.* at 5-8.) The Commissioner also argues that Plaintiff's use of prescribed psychotropic medication "[do[es] nothing to undermine the ALJ's decision" because "[t]he ALJ's finding that the objective medical evidence was largely normal and inconsistent with Plaintiff's allegations stands unchallenged." (*Id.* at 8-9.) Next, as for the ALJ's determination that Plaintiff's testimony was inconsistent with her activities of daily living, the Commissioner argues that "[t]he issue here is not whether Plaintiff's activities evinced actual vocational ability, but rather whether they suggest greater functional ability than she has alleged." (*Id.* at 9-10.) The Commissioner argues that the ALJ's finding of inconsistency was supported by substantial evidence because, for example, although "Plaintiff testified that—because of her anxiety—she would not leave the house and did not have a social life," "the ALJ noted . . . that she 'maintained the ability to shop in stores and spend time with others, such as with family when they visited.'" (*Id.* at 10-12, citations omitted.) Finally, as for the ALJ's determination that Plaintiff's testimony was inconsistent with the opinion evidence, the Commissioner argues that this was an additional permissible basis for discounting Plaintiff's testimony and that Plaintiff forfeited any contrary argument by failing to "challenge the ALJ's analysis of the . . . medical opinion evidence." (*Id.* at 12-14.)

Plaintiff did not file a reply brief.

…

…

4.     Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony. One of the ALJ's proffered reasons for discounting Plaintiff's testimony was that it was inconsistent with the objective medical evidence in the record. Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency with the objective medical evidence was supported by substantial evidence. Although the ALJ acknowledged that the objective medical evidence supported the conclusion that Plaintiff suffered from severe mental impairments that limited her in various ways, the ALJ also noted that the record was replete with evidence that Plaintiff "routinely show[ed] normal or intact memory, normal or intact attention span and concentration, and normal or intact judgment," was routinely observed as "calm and cooperative," and performed well and exhibited sustained concentration during an mental status examination. (AR at 22, 25.) As a factual matter, the ALJ's assertions on these points were supported by substantial evidence, as the ALJ accurately summarized the cited medical records. (*See, e.g., id.* at 623 ["mental status: alert and oriented x 3; appropriate affect and demeanor; recent and remote memory are intact; good insight and judgement."]; *id.* at 626 [same]; *id.* at 629 [same]; *id.* at 632 [same]; *id.* at 635

[same]; *id.* at 637 [same]; *id.* at 642 [same]; *id.* at 680 [same]; *id.* at 683 [same]; *id.* at 718 [logical thought process, fair concentration, good fund of knowledge, insight, and judgement]; *id.* at 742 [same, except good concentration and fair insight and judgment]; *id.* at 755 ["mental status: alert and oriented x 3; appropriate affect and demeanor; recent and remote memory are intact; good insight and judgement."]; *id.* at 808 [same]; *id.* at 811 [same]; *id.* at 941 [same]. *See also id.* at 648-49 [Plaintiff scored 26/30 on mini mental status exam].)

Turning to Plaintiff's symptom testimony, in one of her function reports, Plaintiff reported that she was limited when it came to "[m]emory, completing task, concentration, understanding & following instructions—[I'm] very forgetful & can't stay focused. I'm very loud & confrontation with others if agitated. . . . I'm not good even anymore at trying to follow simple written instructions like recipes or even how to put something together or meds. . . . My mind drifts off and I can[']t concentrate or follow the spoke instructions[,] keep having to ask for help." (*Id.* at 538.) Similarly, during the hearing, Plaintiff made such statements as "[m]y concentration—I can't focus," "I can't remember anything," and "I don't have any interest in TV or reading [because] I can't concentrate." (*Id.* at 292, 296.) It was rational for the ALJ to view the cited records as inconsistent with such testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citation omitted). *See also Ozolins v. Saul*, 849 F. App'x 682, 682 (9th Cir. 2021) ("The ALJ gave 'specific, clear, and convincing' reasons supported by substantial evidence for discounting Ozolins' subjective symptom testimony. Ozolins' complaints were inconsistent with the medical record, which reflected, for instance, largely unremarkable mental status examination findings.").

The Court also disagrees with Plaintiff's contention that the ALJ only provided a generic summary of the medical evidence and failed to explain why that evidence conflicted with her testimony. The ALJ specifically explained that "while [Plaintiff] alleged in her function reports that her conditions affected her memory, her ability to

complete tasks, concentration, understanding, her ability to follow instructions, and her ability to get along with others . . . examination results[] and observations and reports made by providers support the finding that she has moderate limitations in the broad areas of functioning, as discussed with regard to the 'paragraph B' criteria analysis." (*Id.* at 25.) The ALJ also cited the same records that are summarized above. This was a more-than-adequate expression of the ALJ's reasoning. *See generally Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

Another of the ALJ's proffered reasons for the adverse credibility determination was that Plaintiff's description of her symptoms conflicted with Plaintiff's activities of daily living. Under Ninth Circuit law, this is another permissible basis for discounting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency was supported by substantial evidence. Plaintiff acknowledged in the initial version of her function report that she was able to prepare meals, perform indoor household chores (such as doing the laundry, cleaning the bed, and general cleaning), and shop in stores. (AR at 486-87.) However, only a few months later,

Plaintiff completed a new function report in which she denied being able to do those things. (*Id.* at 535-36.) Similarly, during the hearing, Plaintiff flatly denied being able to do the dishes, go to the store, cook, or do the laundry. (*Id.* at 290-91.) It was rational for the ALJ to make a finding of inconsistency under these circumstances. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

This also marks another instance where Plaintiff's attempt to characterize the ALJ's analysis as generic and insufficiently detailed is belied by the record. The ALJ specifically noted that the daily activities described in Plaintiff's first function report, which included "performing personal care, preparing simple meals, shopping in stores and by computer," "manag[ing] personal finances," and "spend[ing] time with others, such as with family when they visited" were inconsistent with Plaintiff's subsequent allegations "that her conditions affected her memory, her ability to complete tasks, concentration, understanding, her ability to follow instructions, and her ability to get along with others" and specifically emphasized the "notable inconsistencies" between the two function reports that Plaintiff submitted, which reflected "a drop in functioning that the undersigned is unable to support with treatment records and examination findings for this period." (AR at 22, 25, 26.)

Nor is there any merit to Plaintiff's seeming contention that an ALJ must ignore discrepancies between a claimant's description of her symptoms and the claimant's daily activities unless the latter "demonstrate an ability to spend a substantial part of the day doing activities transferable to a full-time work setting." (Doc. 11 at 13.) The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014). This makes sense—a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching material does not, on its own, foreclose the claim for relief. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

(recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . ."). *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

Finally, the ALJ's third proffered reason for the adverse credibility determination was that Plaintiff's testimony conflicted with the opinion evidence that the ALJ deemed persuasive. This, too, appears to be a permissible basis under Ninth Circuit law for discounting a claimant's symptom testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) ("[T]he medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found Stubbs-Danielson could perform a limited range of work—support the ALJ's [adverse] credibility determination."). Because Plaintiff's brief fails to acknowledge (let alone raise any objection to) this aspect of the ALJ's ruling, it provides another reason why the ALJ's decision must be affirmed. *Cf. Guinn v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2495360, *8 (D. Ariz. 2023) ("Plaintiff focuses on only a subset of the ALJ's proffered reasons and attempts to establish that those reasons were factually unsupported or inadequately explained. But even if Plaintiff were correct as to that subset of the ALJ's reasons, any error would be harmless in light of the ALJ's identification of other, unchallenged reasons . . . .").[2]

---

[2] Alternatively, even if there were any error in this rationale, the error would be harmless in light of the ALJ's identification of multiple other clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony. *Molina*, 674 F.3d at 1112-13 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (even though "we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid," "the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 28th day of September, 2023.

Dominic W. Lanza
United States District Judge